# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOHN DOE, et al., | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 09 CV 7656 |
| THE CATHOLIC ARCHDIOCESE OF CHICAGO, et al., | ) Magistrate Judge Young B. Kim |
| Defendants. | ) June 8, 2010 |

## MEMORANDUM OPINION and ORDER

Before this court is the defendants' motion to disqualify Phillip Aaron ("Aaron") and Phillip Aaron Law Firm, P.C. from representing the plaintiffs in this case. The defendants argue that Aaron must be disqualified because he has a personal conflict of interest that will impair his ability to zealously represent his clients. They also argue that Aaron should be disqualified because he is a fact witness to the events underlying the current claims. For the following reasons, the defendants' motion to disqualify plaintiffs' counsel is granted.

### Procedural History

On December 10, 2009, attorney Phillip Aaron filed this multi-count lawsuit on behalf of 73 plaintiffs who identify themselves as African American and Hispanic survivors of sexual abuse perpetrated by priests in the Catholic Archdiocese of Chicago ("the Archdiocese"). Each of the plaintiffs has mediated or litigated prior claims against the Archdiocese stemming from that alleged abuse. In the current suit, the plaintiffs claim that in the course of the previous legal and mediation proceedings, the Archdiocese, Cardinal

Francis E. George, and Bishop Raymond Goedert violated the plaintiffs' civil and constitutional rights by, among other things, injecting "discriminatory conditions" into the mediation proceedings and settling their abuse claims for less money than they offered to white sexual-abuse victims. (R. 14, Am. Compl. at 25-26.) The plaintiffs also claim that the defendants' conduct violated the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, *et seq.*, and numerous state laws. (Id. at 27-35.) The complaint demands $8.5 million in damages for each of the 73 plaintiffs (a total of $620.5 million). (Id. at 35-36.)

On March 1, 2010, the Executive Committee for the United States District Court for the Northern District of Illinois referred this case to the assigned magistrate judge to conduct hearings and enter appropriate orders on all nondispositive pretrial motions. Two weeks later the defendants filed the current motion to disqualify Aaron, along with a motion to dismiss the complaint in its entirety. The motion to disqualify falls within the scope of the referral to this magistrate judge. The motion to dismiss is currently pending before the presiding district judge.

**Facts**

In support of their motion to disqualify Aaron and his law firm, the defendants submitted documents showing that he represented most of the current plaintiffs in the mediation and settlement proceedings that gave rise to the current allegations. (R. 26, Mot. to Disqualify, Group Exs. A-D.) Aaron negotiated settlements on behalf of 47 of those

plaintiffs. (Id. Group Exs. B & C.) He signed each of the 47 settlement agreements, which include language releasing the Archdiocese and Cardinal George from any known or unknown claims arising from any matter prior to the date of the agreements. (Id.) Six of the settlement agreements go further than releasing future claims; they include the following indemnification language:

> Phillip Aaron, individually and on behalf of The Law Office of Phillip Aaron, and [Doe], agree to hold harmless, defend and indemnify the Released Parties their agents, attorneys and insurers, from payment and satisfaction of any and all liens, claims, or causes of action related to this Agreement or any tax related liabilities or responsibilities related to this Agreement.

(Id. Group Exs. B & C, Settlement Agreements of Jane Does 1-4, John Does 14 & 35, ¶ 17.)

Although the current complaint is lengthy and includes a number of factual assertions that seem untied to any legal claims, all of the allegations relate to the course of the prior litigation and mediation in which Aaron participated as counsel for the claimants. For example, the plaintiffs allege that in the course of mediation the defendants: forced only minority abuse victims to submit to polygraph examinations, subjected them to demeaning treatment, tried to force them to remain silent regarding their claims, concealed evidence from them to cause them to settle their claims for less than they are worth, and refused to settle with some of them because of racial prejudice. (R. 14, Am. Comp. at 25-26, 29.) Whether those allegations state a federal claim is a question that is currently pending before the district judge. (*See* R. 28, Mot. to Dismiss.)

3

**Analysis**

In the current motion to disqualify, the defendants argue that Aaron cannot serve as the plaintiffs' attorney without violating this court's local rules regarding attorney conflicts of interest and attorneys serving as witnesses. *See* L.R. 83.51.7 (Conflicts of Interest); L.R. 83.53.7 (Lawyer as Witness). According to the defendants, Aaron's conflict stems from what they say is his agreement to personally indemnify the defendants from liability for the claims described in the current complaint. They also argue that because he was present throughout the mediation proceedings which are the subject of this lawsuit, Aaron will be an essential fact witness in this case.[1] In response, the plaintiffs argue that Aaron has no conflict of interest because, they say, the indemnification clauses were never meant to cover the current allegations. Alternatively, they argue that because many (but not all) of the plaintiffs have consented to the cited conflict, disqualification is unnecessary. Finally, the plaintiffs argue that even if Aaron eventually becomes a witness, it is premature at the pleading stage to disqualify him based on the attorney-witness rule.

The Seventh Circuit has long viewed attorney disqualification as a "drastic measure," and warned that motions for disqualification "should be viewed with extreme caution" given

---

[1] The defendants make the same arguments with respect to Terry Overton, who is referenced in the Amended Complaint as an Illinois attorney who is associated with the Phillip Aaron Law Firm. (R. 14, Am. Compl. at 5.) Overton has not appeared as an attorney in this suit, and the plaintiffs assert that he is no longer associated with Aaron's firm. (R. 41, Pls.' Resp. at 7 n.3.) Accordingly, to the extent the defendants argue that Overton should be disqualified, those arguments are moot.

their potential misuse as "techniques of harassment." *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721-22 (7th Cir. 1982); *see also Owen v. Wangerin*, 985 F.2d 312, 317 (7th Cir. 1993). Nonetheless, there are situations where disqualification is "both legitimate and necessary," *Freeman*, 689 F.3d at 722, and this court has broad discretion to determine whether disqualification is proper in a particular case, *Whiting Corp. v. White Mach. Corp.*, 567 F.2d 713, 715 (7th Cir. 1977). In making that determination, this court must balance the clients' interest in retaining the counsel of their choice against this court's interest in upholding the ethical standards set forth in its local rules. *See Hutchinson v. Spanierman*, 190 F.3d 815, 828 (7th Cir. 1999) (discussing attorney-witness conflict under similar Indiana rules); *Whiting*, 567 F.2d at 715.

This court begins its analysis with the weaker of the defendants' arguments in favor of disqualification: that Aaron should be disqualified because he may serve as a necessary fact witness in this case. The relevant attorney-witness rule is set forth in Local Rule 83.53.7(b):

> [i]f a lawyer knows or reasonably should know that the lawyer may be called as a witness other than on behalf of the client, the lawyer may act as an advocate in a trial or evidentiary proceeding unless the lawyer knows or reasonably should know that the lawyer's testimony is or may be prejudicial to the client."

The rule exists because attorneys—unlike witnesses—are ethically bound to promote their clients' interests, *Cunningham v. Hamilton County, Ohio*, 527 U.S. 198, 206 (1999), and a lawyer attempting to serve both roles "is apt to be a poor witness, a poor advocate, or both,"

5

*Gusman v. Unisys Corp.*, 986 F.2d 1146, 1148 (7th Cir. 1993). That is because the dual role may confuse jurors or create an appearance of impropriety, and because an attorney is unlikely to be a truly objective witness while zealously representing his client's interests. *Mercury Vapor Processing Techs., Inc. v. Vill. of Riverdale*, 545 F. Supp. 2d 783, 787 (N.D. Ill. 2008).

Here, the defendants argue that because Aaron participated in the very mediation proceedings that the plaintiffs now claim were discriminatory, he is likely to be a key witness against his clients' claims. Their point is well-taken, but it is also premature. Because this case is still in the pleading phase, the dangers the defendants cite are, at this point, only possible risks. *See In re Thomas Consolidated Indus., Inc.*, 289 B.R. 647, 653-54 (N.D. Ill. 2003). Right now it is entirely speculative whether any of the claims will survive the pending motion to dismiss, let alone proceed to trial. And because the parties have yet to engage in discovery, there is no way to know whether if the case goes to trial Aaron will testify, or whether other witnesses could testify to the same matters as Aaron. *See Mercury Vapor*, 545 F. Supp. 2d at 788-89. What's more, the prohibition on attorneys acting as witnesses applies only to trial and evidentiary proceedings. L.R. 83.53.7(b). The relevant rule specifically states that it should not be construed to prevent an attorney-witness "from handling other phases of the litigation." L.R. 83.53.7(c). That leaves the lawyer free to conduct discovery, draft motions, and otherwise participate in the pretrial stage. *See Mercury*

*Vapor*, 545 F. Supp. 2d at 789. Accordingly, at this stage in the case the defendants' concern regarding the attorney-witness rule does not warrant Aaron's disqualification.

More troubling and immediate than Aaron's possible future role as a witness is the evidence that he is operating under an actual conflict of interest. Local Rule 83.51.7(b) addresses circumstances in which a lawyer's personal interests conflict with the clients':

> A lawyer shall not represent a client if the representation of that client may be materially limited . . . by the lawyer's own interests, unless: (1) the lawyer reasonably believes the representation will not be adversely affected; and (2) the client consents after disclosure.

*See also Coburn v. DaimlerChrysler Servs. N. Am., L.L.C.*, 289 F. Supp. 2d 960, 965-66 (N.D. Ill. 2003). The rule exists to ensure "that clients receive the undivided loyalty of their counsel." *Guillen v. City of Chicago*, 956 F. Supp. 1416, 1421 (N.D. Ill. 1997). In determining whether a conflict requires an attorney to be disqualified, the key questions are whether a conflict "will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client." L.R. 83.51.7 Comm. Comment.

The defendants have submitted documents showing that in the course of the mediation proceedings that gave rise to this lawsuit, Aaron signed six settlement agreements in which he agreed personally to indemnify the defendants "from payment and satisfaction of any and all liens, claims, or causes of action related to" the settlement agreement. (R. 26, Group Exs. B & C, Settlement Agreements of Jane Does 1-4, John Does 14 & 35, ¶ 17.) The defendants

persuasively argue that this language creates an actual conflict of interest for Aaron because he has a contractual duty to defend them from the very claims the plaintiffs bring here, and because, they say, he may be personally liable for a portion of any damages the plaintiffs might recover. In response the plaintiffs argue that the indemnification clause does not give rise to a conflict of interest, and that even if it did, the consent of Aaron's clients renders disqualification unnecessary.

In arguing that the indemnification clause does not create a conflict of interest, the plaintiffs assert that the parties to the previous settlement agreements never intended the indemnification clause to cover claims such as those in the current complaint. Instead, they argue that the indemnification clause only applies to "claims brought by nonparties, such as health providers or lien holders, who may later bring a claim against the settlement proceeds." (R. 41, Pls.' Resp. at 9.) They cite no language from the settlement agreement to support that reading, and their interpretation ignores the straight-forward language saying that: "Phillip Aaron, individually and on behalf of The Law Office of Phillip Aaron . . . agree to hold harmless, defend and indemnify the Released Parties . . . from payment and satisfaction of any and all liens, claims, or causes of action related to this Agreement." (R. 26, Group Exs. B & C, Settlement Agreements of Jane Does 1-4, John Does 14 & 35, ¶ 17.) That plain language says nothing about health providers and cites liens as only one form of potential liability covered by the indemnification clause. The plaintiffs also argue that the indemnification language does not apply to their claims because, according to them, the

8

defendants' interpretation is "nonsensical," because it would mean Aaron had "intentionally bound himself in perpetuity to the defendants by committing to defend them against any cause of action, brought by any person, at any time, for any reason." (R. 41, Pls.' Resp. at 9.) But that argument is pure bluster. The defendants do not suggest that Aaron is forever bound to indemnify them from any liability at any time or place, but only for claims or causes of action that are connected to his six clients' previous settlement agreements. Notably, the plaintiffs have not argued that the current claims are unrelated to those settlement agreements, and indeed, this court's reading of the current complaint shows that the settlement agreements are central to most of the claims for relief.

Next the plaintiffs argue that the indemnification clauses cannot provide a ground for disqualification because the current complaint alleges that the settlement agreements are the product of fraudulent inducement, and therefore are invalid. But the existence of a controversy over the validity of the agreements—and therefore, necessarily, that of the indemnification clause—does not eliminate the risk that Aaron could find himself saddled with personal liability for the very claims for which his clients seek recovery. Even if the defendants took up Aaron's suggestion that they file a separate indemnification suit against him, the conflict of interest would be eliminated in the current case only if and when that suit resulted in judgment in his favor. Until then, Aaron's personal interest in avoiding potential liability will be out of alignment with his clients' interests in obtaining monetary relief.

Finally, Aaron argues that even if the indemnification clause creates a conflict of interest, his disqualification is unnecessary because the six plaintiffs who are parties to the indemnification agreements all consented to his continued representation of them in the current suit. But in these circumstances, their consent is insufficient to overcome the conflict. First, Aaron submitted affidavits from only 32 of the 73 plaintiffs. To overcome the conflict, Aaron would have to submit consent affidavits from all of the plaintiffs. *See* L.R. 83.51.7, Comm. Comment ("When more than one client is involved, the question of conflict must be resolved as to each client."); *Whiting*, 567 F.2d at 716. But even had he obtained all of his clients' consent, that consent is ineffective in a situation where "a disinterested lawyer would conclude that the client should not agree to the representation." L.R. 83.51.7, Comm. Comment. Here the direct and immediate conflict stems from the risk that Aaron could be personally liable for any judgment his clients receive. Given the severity of Aaron's conflict of interest, this is a situation where no objective attorney would agree that the plaintiffs should consent to Aaron's continued representation. *See Owen*, 985 F.2d at 317 (noting that despite client's consent, lawyer had not made "independent reasonable judgment" regarding competing personal interests). Accordingly, the defendants have shown that Aaron's disqualification from this case is both "legitimate and necessary." *Freeman*, 689 F.3d at 722.

Although neither side raised the question, this court considered whether Aaron's conflict disqualifies him from representing only the six defendants whose claims Aaron

arguably agreed to indemnify, rather than the entire group of plaintiffs. In other words, because the defendants have asserted only that Aaron will be required to indemnify them for the claims of six of the 73 plaintiffs, the court considered whether he could continue to represent the claims of the other 67 plaintiffs without being influenced by the conflict. But a careful review of the current complaint shows that would be impossible. The complaint includes allegations that the defendants fraudulently concealed similar information from all of the plaintiffs, conspired to concoct a false investigative report to influence them all, failed to supervise abusive priests, and engaged in a pattern of racketeering activity. Because the complaint alleges that the defendants engaged in a pattern of activity common to all the plaintiffs, the viability of one plaintiff's claim necessarily depends on the viability of the next plaintiff's claim. To zealously pursue the current claims on behalf of any plaintiff, Aaron necessarily would be promoting the claims of the plaintiffs as a whole. Thus Aaron's conflict of interest with respect to the six plaintiffs whose settlement agreements include the indemnification language inevitably would bleed into his representation of the others' claims. Accordingly, this court concludes that Aaron is disqualified from representing any of the plaintiffs. Because there is no evidence that any attorney other than Aaron currently is associated with Aaron's law firm, Phillip Aaron Law Firm, P.C. is also disqualified.

## Conclusion

For the foregoing reasons, the motion to disqualify Phillip Aaron and Phillip Aaron Law Firm, P.C. is granted.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**